**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**JASON CHRISTOPHER CARR,**

      **Petitioner,**

**v.**                              **Case No.  1:15cv227-WTH/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On October 19, 2015, Petitioner, Jason Christopher Carr, a prisoner in the custody of the Florida Department of Corrections, proceeding with counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, along with a supplement and an exhibit.  ECF Nos. 1, 1-1, 1-2. Respondent filed an answer with exhibits on November 16, 2016.  ECF No. 10.  On February 22, 2017, Petitioner filed a reply with exhibits.  ECF No. 17.  Petitioner challenges his conviction and sentence imposed by the Circuit Court of the Eighth Judicial Circuit, Alachua County, Florida, on October 7, 2009, after a jury found him guilty of one count of lewd or lascivious battery on a person under 16 years of age.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Information filed on March 27, 2008, with two counts of lewd or lascivious battery committed on a child under age 16. Ex. A at 2.[1] Count I alleged that between August 1, 2007, and October 31, 2007, Petitioner committed lewd or lascivious battery on D.M., a person 12 years of age or older but under 16 years of age, by union of the defendant's mouth and the victim's genitals, but without committing the crime of sexual battery. Ex. A at 2. Count II alleged that between August 1, 2007, and October 31, 2007, Petitioner committed lewd or lascivious battery on D.M. by penetration and/or union with the penis of the defendant and the genitals

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through J submitted in conjunction with Respondent's answer. *See* ECF Nos. 10, 10-1, 10-2.

of the victim, but without committing sexual battery.  Ex. A at 2.  Both

counts were alleged to violate section 800.04(4), Florida Statutes.

Jury trial was held on October 7, 2009, and Petitioner was found

guilty as charged as to Count II, including the finding that the defendant

had sexual contact with D.M.  Ex. A at 33.  He was found not guilty as to

Count I.  *Id.*  Petitioner was sentenced on that same date to fifteen years in

prison, with credit for time served of two days.  *Id.* at 36-44.  Petitioner

appealed and on February 11, 2011, the state First District Court of Appeal

affirmed per curiam without a written opinion.[2]  Ex. E.  The mandate was

issued on March 1, 2011.  Ex. F.  *See* Carr v. State, 53 So. 3d 1024 (Fla.

1st DCA 2011) (table).

On October 7, 2011, Petitioner filed a motion for post-conviction

relief, by the mailbox rule, pursuant to Florida Rule of Criminal Procedure

3.850 raising three grounds.  Ex. G at 1-25.  He filed an addendum by the

mailbox rule on December 28, 2011, adding ground four.[3]  Ex. G at 29-36.

---

[2] The claims raised on direct appeal were: (1) trial court error in denying motion for
judgment of acquittal; (2) trial court error in failing to make appropriate findings
regarding the defendant's right to a public trial; and (3) insufficiency of the evidence to
prove the age of the defendant.  Ex. B.

[3] The claims for post-conviction relief were: (1) trial counsel rendered ineffective
assistance (IAC) in failing to object when the State elicited evidence of an uncharged
collateral crime and made it a feature of the trial, Ex. G at 3; (2) IAC in failing to file a
timely motion for new trial on Count II based on the verdict being against the manifest
weight of the evidence, G. at 15; (3) IAC in allowing the verdict to be published and the
jury to be discharged without having reached a unanimous verdict, Ex. G at 20; and

On June 6, 2013, the state court denied the motion in part and granted an evidentiary hearing on ground four, a claim of newly discovered evidence. Ex. G at 74-79.

An evidentiary hearing was held on October 30, 2013, on the claim of newly discovered evidence, at which the court heard testimony of Yolanda Robinson, Lloyd Vipperman, Sharron Carr, and Ana Weintraub (Smith). Ex. G at 318-98.  The state court denied post-conviction relief on January 23, 2014.  Ex. G at 196-301.  Petitioner's motion for rehearing was denied and he appealed the denial of post-conviction relief on all the claims to the state First District Court of Appeal on February 21, 2014.  Ex. G at 315, 313.  Petitioner filed an amended initial brief, Ex. H, and the court affirmed per curiam without a written opinion on February 26, 2015.[4]  Ex. I.  The mandate was issued on March 16, 2015.  Ex. J.  *See* Carr v. State, 158 So. 3d 565 (Fla. 1st DCA 2015) (table).

---

(4) (supplemental claim) newly discovered evidence contained in an affidavit by witness Yolanda Robinson stating that the victim's mother wanted to get the defendant in trouble by saying he had inappropriately touched her daughter, which would probably result in an acquittal, Ex. G at 31-32.

[4] The claims of error raised on appeal from denial of post-conviction relief were: (1) post-conviction court error in finding counsel was not ineffective in failing to object to evidence of uncharged crimes, Ex. H at 8; (2) court error in not finding conviction of Petitioner for an uncharged crime was fundamental error, Ex. H at 21; (3) court error in ruling Petitioner was barred from raising IAC claim for failure to file a motion for new trial based on weight of the evidence, Ex. H at 30; and (4) court error in finding trial counsel not ineffective in failing to object to publication of non-unanimous verdict as shown by polling of the jury, Ex. H at 40.

On October 19, 2015, Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following four grounds for relief:

> (1)  Petitioner was deprived of his constitutional right to effective assistance of counsel because counsel failed to object when the State elicited testimony of uncharged, collateral crimes and when the State made that evidence a feature of the trial.  ECF No. 1-1 at 2.

> (2) The post-conviction court erred by declining to rule that fundamental error necessitating a new trial occurred when the jury convicted Petitioner of conduct not charged in the Information.  ECF No. 1-1 at 6.

> (3)  Petitioner was deprived of his constitutional right to effective assistance of counsel when counsel failed to file a timely motion for a new trial on Count II based on the verdict being against the manifest weight of the evidence.  ECF No. 1-1 at 8.

> (4)  Petitioner was deprived of his constitutional right to effective assistance of counsel when counsel failed to object to the publication of a non-unanimous verdict and to the discharge of the jury when the record showed only five members of the jury were polled and responded affirmatively to the accuracy of the verdict as to Count II.  ECF No. 1-1 at 10.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law

Case No. 1:15cv227-WTH/CAS

claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting

Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be

exhausted, "the petitioner must have given the state courts a 'meaningful

opportunity' to address his federal claim."  Preston v. Sec'y, Fla. Dep't of

Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416

F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim

in each appropriate state court in order to alert the state courts to the

federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995);

Picard v. Connor, 404 U.S. 270, 275 (1971).  In regard to claims of

ineffectiveness of trial counsel, the Petitioner must have presented those

claims in state court " 'such that a reasonable reader would understand

each claim's particular legal basis and factual foundation.' "  Ogle v.

Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at

1302).

       In order to obtain review where a claim is unexhausted and, thus,

procedurally defaulted, the Petitioner must show cause for the default and

prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate

cause, Petitioner must show that an "external impediment, whether it be

governmental interference or the reasonable unavailability of the factual

basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477

U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497

(1991) (emphasizing that the external impediment must have prevented the

petitioner from raising the claim).  A federal court may grant a habeas

petition on a procedurally defaulted claim without a showing of cause or

prejudice if necessary to correct a fundamental miscarriage of justice.

Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).  In order to

satisfy the miscarriage of justice exception, the Petitioner must show that a

constitutional violation has occurred that "probably resulted in a conviction

of one who is actually innocent"—that it is more likely than not that no

reasonable juror would have convicted him—which is a stronger showing

than is necessary to establish prejudice.  *See* Schlup v. Delo, 513 U.S.

298, 327 (1995).  This standard "thus ensures that petitioner's case is truly

'extraordinary.' "  *Id.* (citing McCleskey, 499 U.S. at 494).  Such a case is

"extremely rare."  Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state

court that adjudicated the claim on the merits."  Pinholster, 563 U.S. at 181.

The state court's factual findings are entitled to a presumption of

correctness and to rebut that presumption, the Petitioner must show by

clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."
Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at
690). Federal courts are to afford "both the state court and the defense
attorney the benefit of the doubt." *Id.* at 13. The reasonableness of
counsel's conduct must be viewed as of the time of counsel's conduct. *See*
Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at
690).

To demonstrate prejudice under Strickland, a defendant "must show
that there is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different." 466 U.S. at
694. "A reasonable probability is a probability sufficient to undermine
confidence in the outcome." *Id.* For this Court's purposes, "[t]he question
'is not whether a federal court believes the state court's determination'
under the Strickland standard 'was incorrect but whether that determination
was unreasonable—a substantially higher threshold.' " Knowles v.
Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550
U.S. 465, 473 (2007)). "And, because the Strickland standard is a general
standard, a state court has even more latitude to reasonably determine that
a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123.
It is a "doubly deferential judicial review that applies to a Strickland claim

evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. Strickland, 466 U.S. at 697.

### Ground 1: Failure to Object to Evidence of Uncharged Crimes

Petitioner first contends that he was deprived of his constitutional right to effective assistance of counsel because trial counsel failed to object when the State elicited testimony of an uncharged, collateral crime and when the State made that evidence a feature of the trial. ECF No. 1-1 at 2. He raised this claim in his motion for post-conviction relief in the state court. Ex. G at 3. He contended there that the prosecutor elicited testimony from the victim, D.M., that on several occasions prior to the alleged lewd or lascivious battery, usually when D.M.'s mother was not home, Petitioner, who was her mother's boyfriend, would kiss D.M. *Id.* at 4. That testimony included details of the type of kiss, i.e., open-mouth or closed-mouth. Petitioner also pointed out in his claim that the prosecutor elicited testimony about Petitioner kissing D.M. from other witnesses as well. *Id.* at 5-6. Petitioner argued to the post-conviction court that this evidence of kissing was irrelevant to the charges, became a feature of the trial, and was confusing to the jury. *Id.* at 7. He contended that the evidence was not

similar fact evidence under Florida law and that under section 90.402,

Florida Statutes, the evidence, even if relevant, must be excluded if its

probative value is outweighed by danger of unfair prejudice, confusion of

issues, misleading the jury, or presentation of cumulative evidence.  Ex. G

at 9.

The state court denied the claim in an order entered on June 6, 2013,

concluding that evidence of Petitioner kissing the victim was "inseparable

crime evidence" which was relevant and admissible to establish the entire

context out of which the criminal action—lewd or lascivious battery of

D.M.—occurred.  Ex. G at 76.  The court cited several state court decisions

to support this ruling.  Based on this finding that the evidence was properly

admitted, the court concluded that trial counsel was not deficient in failing

to object and that no prejudice has been shown.  *Id.*

Petitioner makes the same arguments in his § 2254 petition that he

made in this post-conviction claim in state court.  ECF No. 1, 1-1.

Respondent contends that the claim is one solely of state law, which the

state courts resolved against Petitioner.  ECF No. 10 at 8.  Thus,

Respondent argues, "[g]iven that the state court found it was not collateral

crimes evidence under state law, counsel cannot have been deficient for

not making the meritless objection Petitioner now claims should have been made."  ECF No. 10 at 8.

The evidence that Petitioner alleges should have been objected to can be summarized as follows:

> D.M., testified that Petitioner is her mother's ex-boyfriend.  Ex. A at 38 (transcript pagination).  She first met Petitioner in August 2007 when she was age 13 and in seventh grade.  She, her mother, and her brother were living in Petitioner's house while their own house was being repaired.  *Id.* at 39-40.

> D.M. was asked if at any time her relationship with Petitioner became romantic, to which she answered, "Yes."  *Id.* at 41.

> When asked about kissing, D.M. testified that the first time they kissed, they were in the kitchen.  *Id.* at 42.  D.M.'s friend Kayla was in the house that night.  Petitioner had come to the house after calling to speak with D.M.'s mother, who was not home.  "He said he had pizza, so me and Kayla decided to tell him to come over and drop off the pizza."  Ex. A at 42.  D.M. testified that after eating pizza, Petitioner was in the kitchen putting the food away, and "I followed him and gave him a hug.  And then he kissed me."  *Id.* at 43.

> The first kiss in the kitchen was "a peck" on the lips and was "closed-mouth."  *Id.*

> On a different day, when D.M. was in the house with Kayla and another friend, along with her 9-year-old brother who was upstairs sleeping, D.M. was watching television when Petitioner unexpectedly came to the house with pizza.  *Id.* at 45.  D.M. testified that after eating pizza, while in the living room playing a board game with her friends and Petitioner, he wrote her a note asking when her mother would be home.  *Id.* at 46.  D.M. testified everyone fell asleep and at some point Petitioner, who was leaning over her, woke her up and kissed her.  *Id.* at 49-50.  The kissing went on for about five minutes until her brother woke up and became angry.  *Id.* at 51.  D. M. did not report this incident to her mother.  *Id.* at 52,

> D.M. testified that another time, when she went into Petitioner's bedroom to retrieve a blanket for her mother, who was downstairs on

the couch, Petitioner came in and gave her a closed-mouth kiss.  Ex. A at 52-53.

D.M. testified that she stopped by Petitioner's house almost every day while on her way to school (apparently after her family had moved back in to their own apartment, which had been repaired).[5] Ex. A at 53.

D.M. testified that one day, when Petitioner came over to her house (without specifying which house), she and Petitioner began to watch television in the living room.  Ex. A at 56.  She said she was getting sleepy and he turned off the television and began to kiss her, open-mouthed.  *Id.* at 57.  She was wearing her "pajamas" which consisted of loose shorts and a shirt.  *Id.* at 57-58.  D.M. testified that he began touching her inner thigh and then took out his penis and rubbed it on her thigh.  *Id.* at 59-60.  She said he moved her shorts and her underwear to the side and put his penis in her vagina.  Ex. A at 61.

D.M.'s friend Kayla testified that she saw Petitioner and D.M. kiss on more than one occasion.  Ex. A at 73-74.

M.W., younger brother to D.M., testified that one time when he was upstairs sleeping, he was awakened by voices and came downstairs to find Petitioner, D.M. and others eating pizza.  *Id.* at 83-84.  M.W. said he fell asleep again downstairs and was awakened by "kissing and smacking" sounds.  *Id.* at 85.  He turned on the lights and saw Petitioner on top of D.M. and thought they were kissing.  *Id.* at 86-87.  M.W. said Petitioner got off of D.M.  *Id.* at 87.  M.W. testified he was very angry because he "knew it would be wrong to have an older guy - -" and he tried to call his mother.  *Id.* at 87-88.  M.W. said D.M. would not let him call and took the telephone away.  *Id.* at 88.

In the first closing argument, the prosecutor argued, "She was kissing with

Jason Carr. . . .  She was kissing him in front of people. . . .  [S]he was

kissing the defendant in front of her friends, in front of her younger brother."

---

[5] D.M.'s brother testified they only stayed at Petitioner's house for two or three weeks. Ex. A at 81.

Ex. A at 154.  In her final closing argument, the prosecutor argued, "Mr.

Vipperman [defense counsel] asked how we go from kissing to sexual

contact.  The way we go from kissing to sexual contact is with Jason Carr.

He brought us from kissing to sexual contact.  What he actually did was

bring us from kissing to sexual penetration."  Ex. A at 170.

Under Florida law, evidence of uncharged acts or crimes may be

admitted to establish the entire context out of which the criminal conduct

arose.  Jameson v. Wainwright, 719 F.2d 1125, 1127 (11th Cir. 1983)

(citing Smith v. State, 365 So. 2d 704, 707 (Fla. 1978), and Hall v. State,

403 So. 2d 1321, 1324 (Fla .1981)).  As long as the evidence of other

crimes is relevant for any purpose, the fact that it is prejudicial does not

make it inadmissible.  Jameson, 719 F.2d at 1127 (citing Sireci v. State,

399 So. 2d 964, 968 (Fla. 1981), *overruled on other grounds by* Pope v.

State, 441 So. 2d 1073, 1077-78 (Fla. 1983)).

Evidence is inextricably intertwined if the evidence is necessary to

(1) adequately describe the deed; (2) provide an intelligent account of the

crime charged; (3) establish the entire context out of which the charged

crime arose; or (4) adequately describe the events leading up to the

charged crimes.  Hudson v. State, 213 So. 3d 941, 942-43 (Fla. 4th DCA

2017); McGee v. State, 19 So. 3d 1074, 1078 (Fla. 4th DCA 2009); Dorsett

v. State, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006); *see also* Hunter v.

State, 660 So. 2d 244, 251 (Fla. 1995) ("Among the purposes for which a

collateral crime may be admitted is establishment of the entire context out

of which the criminal action occurred.").  The evidence in this case both

established the context out of which the charged crime arose and

described events leading up to the charged crime.

In Kane v. State, 975 So. 2d 1277 (Fla. 4th DCA 2008), the Florida

court held that in a prosecution under section 800.04, evidence that the

defendant took pornographic photographs of the victim of was not

inadmissible evidence of "collateral crimes."  *Id.* at 1281.  The court

explained, "Instead, we view the photographs as evidence of other

[uncharged] acts or crimes which are inseparable from or inextricably

intertwined with the crimes charged."  *Id.*  By taking the photographs, the

court held, the defendant "used his camera as a tool to groom and prepare

her for the abuse.  The photographs are thus inseparable crime evidence,

linked together in time, place, and circumstance with the charged sex

offenses.  They show the entire context in which the molestation occurred."

*Id.*

In this case, Petitioner's kissing D.M. was a tool used to "groom" D.M.

and prepare her for the lewd or lascivious battery with which he was

charged.  The evidence of multiple instances of kissing leading up to the lewd or lascivious act was thus relevant to prove preparation for the charged crime.  The state court correctly determined that the evidence of kissing prior to the charged crime was inextricably intertwined with the charged crime, and thus was admissible.

Because the post-conviction court found that the evidence of Petitioner kissing D.M. on several occasions before the alleged act of lewd or lascivious battery was properly admitted under Florida law, the court concluded that counsel was not deficient for failing to object.  As stated earlier, in a § 2254 proceeding, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).  The state court has wide latitude to reasonably determine that a defendant has not satisfied this doubly deferential Strickland standard.  *See* Mirzayance, 556 U.S. at 123.

Petitioner has failed to show that the state courts' adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, Strickland or any other clearly established federal law as determined by the Supreme Court or was an unreasonable

determination in light of the facts presented in the state court proceeding.

Habeas relief as to Ground 1 should be denied.

## Ground 2: Fundamental Error

The gravamen of Petitioner's second claim is that fundamental error

and a violation of federal due process necessitating a new trial occurred

when the jury convicted him of conduct not charged in the Information

based on evidence of Petitioner kissing D.M.[6]  ECF No. 1-1 at 6.  Petitioner

argues that fundamental error occurred when the jury, in finding Petitioner

guilty of Count II, could have done so based only on the admission of

evidence of kissing and not on proof of the elements of the offense charged

in the Information.  ECF No. 1-1 at 8.  Count II alleged lewd or lascivious

battery by "penetration by and/or union with the penis of the Defendant and

the genitals of said victim."  Ex. A at 2.

Petitioner contends that because the jury found that Petitioner had

"sexual contact" with D.M., but did not find Petitioner penetrated the vagina

of D.M., the jury may have found Petitioner guilty of lewd or lascivious

battery based only on evidence of kissing, conduct that was not charged in

---

[6] In the title of this ground, Petitioner frames the claim as one of post-conviction court error in failing to find fundamental error, but he argues the claim as one of fundamental error in the trial itself.  He does not frame this claim as part of his Ground 1, to which it is related, but alleges it as a separate claim.

the Information.  He states, "There is ample reason to question whether the

Jury, in finding that Petitioner had 'sexual contact' with D.M. but that he did

not penetrate the vagina of D.M., was construing 'sexual contact' not as a

'contact' or 'union' of Petitioner's penis with the genitals of D.M., but rather

as one of the several kissing episodes that the State was allowed to

present evidence of with no objection from trial counsel."  ECF No. 1-1 at 7.

He also contends that the jury convicted Petitioner of conduct not charged

in the Information because nowhere in Count II did it allege violation of

section 800.04(4) by "sexual contact."  *Id.*

Recognizing that the claim was not raised in his trial or in his motion

for post-conviction relief, Petitioner contends that these failures "do[] not

bar this Honorable Court from remedying the fundamental error by

reversing Petitioner's [c]onviction as to Count II and remanding the cause

back to the trial court with instructions to enter a [c]onviction for the lesser

included offense of battery, and impose a lawful sentence."  *Id.* at 8.  A

version of this claim of fundamental error was raised on appeal of the

orders denying post-conviction relief.

In his post-conviction appeal, despite the fact that Petitioner did not

raise the claim in his post-conviction proceeding, Petitioner contended that

a "spillover effect" of the admission of evidence of kissing "infected the

reliability of the jury's verdict" resulting in Petitioner being found guilty of an offense not charged. Ex. H at 21. In that appeal, he relied primarily on state law in an attempt to demonstrate that fundamental error occurred in the trial. *Id.* at 21-30. The state First District Court of Appeal affirmed without a written opinion. Ex. I. *See* Carr v. State, 158 So. 3d 565 (Fla. 1st DCA 2015) (table). The appellate court affirmance of the state law claim raised there is an adjudication on the merits. *See* Wright v. Sec'y for the Dep't of Corrections, 278 F.3d 1245, 1254 (11th Cir. 2002).

The Respondent contends that the claim is unexhausted because Petitioner failed to raise this claim in the state post-conviction court. As noted earlier, Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Henry, 513 U.S. at 365; Picard, 404 U.S. at 275. The State must have been provided with the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275 (citation omitted)). This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845;

*see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secure by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts.  Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.").  The state prisoner is required "to present the state courts with the same claim he urges upon the federal courts."  *Id.*

Because the claim was not raised in each appropriate state court, it is unexhausted and procedurally defaulted.  Further, Petitioner does not allege any grounds upon which the Court may find good cause for the default and resulting prejudice.  Nor has Petitioner provided any grounds for the Court to find that the default must be excused in order to correct a fundamental miscarriage of justice.  In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent," which is a stronger showing than is necessary to establish prejudice.  *See* Schlup, 513 U.S. at 327.  This standard "thus ensures that petitioner's case is truly 'extraordinary.' "  *Id.* (citing McCleskey, 499 U.S. at

494), and is extremely rare. Petitioner has not made this showing of actual innocence of lewd or lascivious battery.

Regardless of any procedural default, Petitioner's claim that there might have been a "spillover" effect from the wrongful admission of that evidence, resulting in conviction for a crime not charged, lacks merit. Petitioner appears to contend that because the jury did not find "penetration," but instead found "sexual contact," the jury could not have found Petitioner guilty of the offense charged in Count II because the Information does not allege "sexual contact." ECF No. 1-1 at 7. He argues that even if "union" as alleged in the Information means "contact," the verdict form does not say anything about "contact" between Petitioner's penis and D.M.'s genitals. These assertions are incorrect.

First, proof of penetration was not required to prove the charge of lewd or lascivious battery by "penetration by and/or union with the penis of the defendant and the genitals of said victim." *See* Ex. A at 2. Because Count II alleged penetration or union, the jury could find, as it no doubt did, that Petitioner was guilty as charged. There was competent, substantial evidence that Petitioner's penis had union with D.M.'s genitals. This evidence satisfied both the "union" element of the charged offense and the finding that "sexual contact" occurred.

The jury found Petitioner guilty as charged, and in a separate finding, not a part of the finding of guilt, the jury found "sexual contact" occurred. This latter finding, under Florida law, pertains not to the elements of the offense charged, but to the assessment of victim injury points on the sentencing scoresheet for sentencing purposes. Section 921.0021, Florida Statutes, pertaining to sentencing states, "If the conviction is for an offense involving sexual contact that does not include sexual penetration, the sexual contact must be scored in accordance with the sentence points provided under section 921.0024[(1)(a)] for sexual contact, regardless of whether there is evidence of any physical injury." § 921.0021(7)(b)2., Fla. Stat. (2007). Under that statute, sexual penetration requires imposition of 80 victim injury point, whereas "sexual contact" requires imposition of 40 victim injury points.[7]

Moreover, even under Petitioner's argument, the additional finding of sexual contact does not negate a conviction for violation of section 800.04(4) by "union," as charged. The trial court instructed the jury as to Count II, in pertinent part, that "[t]he term union means contact." Ex. A at 177 (transcript pagination). The court in State v. Pate, 656 So. 2d 1323

---

[7] Under Florida law, victim injury points for sexual contact may be imposed if the crime necessarily required sexual contact or the jury made such a finding. *See* Greene v. State, 186 So. 3d 1099, 1101 (Fla. 4th DCA 2016).

(Fla. 5th DCA 1995), made clear that "contact alone" between the sexual organ of the offender and the vagina of a victim satisfies the definition of "union." *Id.* at 1325-26. Thus, even if this claim were not unexhausted and procedurally defaulted, it should be denied as meritless.

Respondent also contends that the claim is not a federal claim, but one of state law, and the sole citation to the Fourteenth Amendment is insufficient to convert the claim to a federal claim cognizable in this § 2254 proceeding. ECF No. 10 at 16-17. Petitioner does not state a federal claim merely by perfunctory mention of the Federal constitution, but he must present the substance of the federal aspect of the claim. *See* Harless, 459 U.S. at 6 ("[T]he habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim."). *See also* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) ("Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which are merely 'couched in terms of equal protection and due process.' ") (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)); *see also* Carson v. Dir. of the Iowa Dep't of Corr. Servs., 150 F.3d 973, 975 (8th Cir. 1998) (holding that "[a]lthough Carson casts his jury instruction arguments as due process arguments, '[e]rrors of state law cannot be repackaged as federal errors simply by

citing the Due Process Clause.' ") (citing <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3rd Cir. 1997)).

The claim made by Petitioner in his post-conviction appeal in the state court is founded on and cites exclusively to state law.[8]  That state law claim was rejected by the state First District Court of Appeal.  His brief reference to the Fourteenth Amendment in this Court cannot convert his otherwise state law claim to a federal one for purposes of habeas corpus when the substance of the claim remains that of state law.  The claim is therefore not cognizable in this Court.  As noted earlier, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>McGuire</u>, 502 U.S. at 67-68.  A "mere error of state law" is not a denial of due process.  <u>Cooke</u>, 562 U.S. at 222 (2011) (quoting <u>Isaac</u>, 456 U.S. at 121, n.21).  Violations of state law are not cognizable in a § 2254 proceeding unless they are of federal constitutional magnitude.  *See* <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984).  Petitioner has

---

[8] Petitioner's reference to <u>Strickland</u> in regard to this claim in the state appellate court is inapplicable to a claim of fundamental error and cannot convert his state law claim to a federal one.  *See* Ex. H at 22-23.

failed to demonstrate in this claim that an error of constitutional magnitude has occurred.

For the foregoing reasons—that the claim is unexhausted and procedurally defaulted, is not cognizable in this federal habeas proceeding, and is without merit—the claim should be denied.  Petitioner has failed to demonstrate that the state court adjudication of this claim resulted in a decision that is contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Ground 2 should be denied.

### Ground 3: Failure to Move for New Trial on Weight of Evidence

Petitioner next contends that he was deprived of his constitutional right to effective assistance of counsel when counsel failed to file a timely motion for a new trial alleging that the verdict for Count II was against the manifest weight of the evidence.  ECF No. 1-1 at 8.  The Respondent contends that counsel could only be ineffective for failing to file a motion for new trial under Florida law if it is clear that the motion would have been granted.  And, Respondent argues, the affirmance of denial of post-conviction relief on this claim demonstrates that as a matter of state law,

counsel was not ineffective for failing to challenge the weight of the evidence in a motion for new trial—and that such a decision is entitled to deference under the AEDPA.  ECF No. 10 at 27-28.

In his post-conviction motion, Petitioner alleged that the only evidence of the lewd or lascivious battery came from D.M., who testified that Petitioner put his penis in her vagina.  Ex. G at 16.  He argued that her testimony established either a completed crime of lewd or lascivious battery by penetration or no crime at all.  *Id*.  Petitioner contended that there was sufficient evidence, although "just barely," to establish a prima facie case but that the verdict was contrary to the weight of the evidence.  *Id.* at 17.  By not filing a motion for new trial challenging the weight of the evidence, Petitioner argued, his counsel prevented the trial judge from acting as the "seventh juror" and prevented the trial court from weighing the evidence and finding it lacking sufficient weight for a conviction.  *Id.*

The post-conviction court summarily denied the claim on the ground that it essentially raised an issue of sufficiency of the evidence, which could have been raised on direct appeal and is not cognizable in a collateral attack.[9]  Ex. G at 77.  On appeal from this post-conviction ruling, Petitioner

---

[9] On direct appeal from his conviction and sentencing, Petitioner did appeal the denial of the motion for judgment of acquittal based on the insufficiency of the evidence to

contended that the court erred in finding his claim procedurally barred. Ex. G at 30. The post-conviction court's ruling was affirmed per curiam without a written opinion. Ex. I.

Petitioner makes similar claims in this court that the testimony of D.M. proved either penetration or no crime at all, and that the jury rejected the allegation of penetration, finding only "sexual contact" in the additional findings made on the verdict form. ECF No. 1-1 at 8-9. He also contends that trial counsel's failure to file a motion for new trial challenging the weight of the evidence and arguing that the verdict was motivated more by the excessive evidence of uncharged crimes (kissing, as discussed in Ground 1 above) rendered the result of the trial unreliable. *Id.* at 10.

The post-conviction court treated this claim as one challenging the "sufficiency" of the evidence, rather than one alleging the ineffectiveness of counsel in failing to file a motion for new trial raising the "weight" of the evidence, as was alleged in the post-conviction motion. In treating the claim as challenging the sufficiency of the evidence, the post-conviction court found the claim procedurally barred.

---

prove Count II. Ex. B at 17-19. A motion for new trial is not a necessary predicate for arguing the sufficiency of the evidence on appeal.

The issue of <u>sufficiency</u> of the evidence is raised by a motion for judgment of acquittal pursuant to Florida Rule of Criminal Procedure 3.380. The issue of <u>weight of the evidence</u> to support the verdict is raised under Florida Rule of Criminal Procedure 3.600(a)(2). Under that rule, a motion for new trial raises the issues of whether the "verdict is contrary to law or the weight of the evidence." Fla. R. Crim. P. 3.600(a)(2). A motion for new trial, if one had been filed, would have been directed to the sound discretion of the trial court. When considering a motion for new trial based on the argument that the verdict is against the weight of the evidence, the trial court must exercise its discretion to determine whether a greater amount of credible evidence supported one side or the other. *See* <u>Fulword v. State</u>, 29 So. 3d 425, 426 (Fla. 5th DCA 2010). The motion is intended to provide a "safety valve" when technically sufficient evidence proves the criminal charge but the weight of the evidence does not appear to support the verdict. *See* <u>State v. Shearod</u>, 992 So. 2d 900, 904 (Fla. 2d DCA 2008). Regardless of whether the trial court incorrectly found the claim to be one of sufficiency of the evidence, the claim of ineffective assistance of counsel is without merit.

Petitioner cannot rely on a *per se* rule of ineffective assistance for failing to file a motion for new trial.[10]   *See* Jewson v. Crosby, No. 3:04cv71-MCR/MD, 2005 WL 1684209, *7 (N.D. Fla. Mar. 11, 2005), report and recommendation adopted as modified, No. 3:04cv71-MCR/MD, 2005 WL 1692617 (N.D. Fla. June 16, 2005).  *See also* Manley v. State, 605 So. 2d 1327, 1328 (Fla. 2d DCA 1992) (affirming denial of relief on ineffective assistance claim based on attorney's failure to file timely motion for new trial because defendant failed to show likelihood that a new trial would have been ordered).  Petitioner has not demonstrated a likelihood that a new trial would have been ordered and has therefore failed to demonstrate prejudice.

Even if counsel had made a motion for new trial, it would have been denied.  Petitioner is misreading the verdict form to conclude that a finding of no penetration means that he could not have been convicted of the crime of lewd or lascivious battery.  This ignores the allegation in the Information that lewd or lascivious battery occurred by "union" of Petitioner's penis with D.M.'s genitals.  The jury found Petitioner guilty as charged.  This finding of guilt preceded, and was not dependent upon, the additional findings on the

---

[10] A presumed prejudice standard is applicable only in a few narrowly circumscribed situations not present here.  *See, e.g.*, Roe v. Flores-Ortega, 528 U.S. 470, 482 (2000).

verdict form.  The additional findings pertaining to penetration or sexual contact, as discussed in Ground 2 above, related to victim injury points that could be imposed on the sentencing scoresheet pursuant to section 921.0021(7)(b)2., Florida Statutes.

It was within the province of the jury to determine the credibility of D.M.  By finding Petitioner guilty as charged of a crime that could be committed by either penetration or union, the jury determined that even if penetration did not occur, D.M.'s testimony was sufficient to find union of Petitioner's penis with D.M.'s genitals.  The jury was not required to accept her testimony as a package but could determine which portions of her testimony were most credible.  Under federal and Florida law, juries are free to accept such portions of a witness's testimony as they deem credible and reject other portions which they deem inconsistent with proven circumstance and probabilities.  Wynne v. Adside, 163 So. 2d 760, 763 (Fla. 1st DCA 1964).  "[I[t is the jury's function to credit or discredit all or part of the testimony."  Moore v. Chesapeake & O. Ry. Co., 340 U.S. 573, 576 (1951).  *See also* United States v. Sharif, 893 F.2d 1212, 1214 (11th Cir. 1990) (stating that a jury is free to believe or disbelieve all or part of a witness's testimony); United States v. Prince, 883 F.2d 953, 959 n.3 (11th Cir. 1989) (same).  Thus, even if the jury found D.M.s testimony about

penetration lacking, the jury could still determine that her testimony supported a finding that "union" occurred, as charged in the Information.

As discussed in Ground 2, the additional finding of "sexual contact" for purposes of victim injury points does not conflict with, but is in accord with, the jury's finding Petitioner guilty as charged of lewd or lascivious battery.  The purpose of a criminal information is to fairly apprise defendant of the offense with which he is charged, and must allege the essential elements of the crime.  Brown v. State, 21 So. 3d 108, 110 (Fla. 4th DCA 2009).  Not all facts affecting punishment are elements of the crime charged and therefore not every fact bearing on sentencing must be alleged.  *Id.* at 111.  In this case, "sexual contact" for purposes of assessing victim injury points was not an element of the crime charged, but was a circumstance bearing on the victim injury points to be assessed.  Thus, "sexual contact" was not required to be alleged in the information.  *Id.*; *see also* Rogers v. State, 963 So. 2d 328, 336 (Fla. 2d DCA 2007).  The finding of "sexual contact" for purposes of sentencing was separate and apart from the jury's decision on whether Petitioner was guilty of the crime charged and its finding does not impugn the verdict in any way.

Petitioner has failed to establish a reasonable probability that but for the alleged error of counsel, the result of the proceeding would have been

different—a reasonable probability being one sufficient to undermine the court's confidence in the outcome of the trial. The comments of the trial judge, at sentencing, demonstrate that the judge was convinced by the evidence that Petitioner, who was the adult, was the one with the age and maturity to have had the foresight to prevent the crime from occurring and to prevent the damage to the young teenage girl who was harmed by it. Ex. A at 213-14 (transcript pagination). The court did not express any doubts about the sufficiency or the weight of the evidence. *Cf.* Lamb v. State, 124 So. 3d 953, 957 (Fla. 2d DCA 2013) (finding counsel ineffective for failing to file a motion for new trial where the identification testimony was "highly equivocal," and the trial judge characterized the testimony as "the weakest identification he had ever seen").

Accordingly, Petitioner has failed to demonstrate that the state court's denial of relief on this claim is contrary to, or an unreasonable application of, Strickland or any other clearly established federal law as determined by the Supreme Court. Nor has he shown that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Habeas relief on Ground 3 should, therefore, be denied.

## <u>Ground 4: Failure to Object to Non-unanimous Verdict</u>

In his last ground, Petitioner contends he was deprived of his constitutional right to effective assistance of counsel when counsel failed to object to the publication of a non-unanimous verdict and to the discharge of the jury when the record showed that only five members of the jury were polled and affirmed the verdict.  ECF No. 1-1 at 10.  Petitioner argues that when the clerk failed to elicit a response from the sixth juror during the polling of the jury, his counsel should have objected to the discharge of the jury or sought to have the court interview the juror to ask if the verdict correctly represented the juror's decision.  *Id.*  Petitioner claims that the failure to demonstrate that the jury was unanimous was fundamental error resulting from counsel's failure and a new trial is required.  *Id.* at 11.

Petitioner raised this claim in his motion for post-conviction relief, Ex. G at 20, and the post-conviction court summarily denied the claim.  Ex. G at 77.  The state court reasoned that even though Juror 33 was not polled, "[t]here is nothing in the record to suggest that the verdict of the jury was not unanimous.  Defendant's claim is based on mere speculation and conjecture."  *Id.* at 77-78.  The court also found that Petitioner failed to show prejudice.  *Id.*  The post-conviction court also noted that no juror voiced disagreement with the verdict.  *Id.* at 78.  Petitioner appealed the

denial of relief and the state First District Court of Appeal affirmed. Ex. H at 40; Ex. I. Respondent contends the claim for federal habeas relief is without merit and, based on federal precedent, denial of relief was not unreasonable.

There is nothing in the record to indicate that the verdict was not unanimous. Thus, counsel's failure to object to the sixth juror not being polled does not provide a basis for habeas relief on grounds of ineffective assistance of counsel. *See* United States v. Costa, 691 F.2d 1358, 1363-64 (11th Cir. 1982) ("Since there is nothing in the record to indicate any juror was uncertain of the verdict, counsel's failure to request a poll does not fall outside the range of competence expected of attorneys in criminal cases."). To the contrary, the record in this case contains sufficient indicia of unanimity.

The jury was instructed two times that its verdict must be unanimous, that all jurors must agree, and that the verdict must be the verdict of each juror as well as the jury as a whole. Ex. A at 183,185. Jurors are presumed to follow the law as instructed by the court and to comply with their oath. Hallford v. Culver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005). Without any

evidence that the jury was not unanimous, this presumption must be indulged.

The verdict itself, which was read in open court after having been returned by the jury, states, "So say we all this 7th day of October, 2009." Ex. A at 198.  *Cf.* Rivera v. Conway, 350 F. Supp. 2d 536, 547 (S.D. N.Y. 2004) (finding no lack of unanimity and noting that clerk asked the foreperson "so say you all?" to which she responded in the affirmative). When the verdict was read in open court in Petitioner's case, no juror indicated any disagreement.[11]  In the absence of any evidence to the contrary, the record supports a conclusion that the verdict was unanimous. *See also* Guenther v. Sec'y, Dep't of Corr., No. 1:08cv241-MP/GRJ, 2012 WL 967426, at *6 (N.D. Fla. Feb. 16, 2012) (unpublished) (where nothing in the record supports conclusion that the verdict was not unanimous, counsel's failure to object to improper polling does not provide a basis for relief on ineffective assistance grounds).

---

[11] Florida Rule of Criminal Procedure 3.440 provides that the jury shall return to the courtroom and shall be asked if an agreement has been reached.  If the foreperson answers in the affirmative, the judge shall ask the foreperson to deliver the verdict to the clerk.  "The clerk shall then read the verdict to the jurors, and unless disagreement is expressed by one or more of them or the jury is polled, the verdict shall be entered of record, and the jury discharged.  Fla. R. Crim. P. 3.440.  Thus, even absent any polling of the jury, the verdict shall be entered if no juror expresses disagreement when it is read.

Accordingly, Petitioner's trial counsel was not deficient in failing to object or to seek a juror interview after the polling of the jury. The decision of the state courts that counsel was not ineffective is not unreasonable. Thus, Petitioner has failed to demonstrate, as required by § 2254(d), that the adjudication by the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, <u>Strickland</u> or any other clearly established federal law, as determined by the Supreme Court, or that it was an unreasonable determination of the facts in light of the state court record. Ground 4 should be denied.

## Conclusion

Based on the foregoing, Petitioner Jason Christopher Carr is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

     **IN CHAMBERS** at Tallahassee, Florida, on June 6, 2017.


           **s/ Charles A. Stampelos**          
           **CHARLES A. STAMPELOS**
           **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

     **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**